Rufo, Robert C., J.
I. INTRODUCTION
The plaintiff, Thomas A. Joyce (“Joyce”), filed this defamation case against defendants Robert Slager (“Slager”) and the Wareham Observer (“the Observer”). This matter is before the court on Slager and the Observer’s Special Motion to Dismiss Pursuant to G.L.c. 231, §59H. For the reasons set forth below, Slager and the Observer’s Special Motion to Dismiss Pursuant to G.L.c. 231, §59H is ALLOWED.
II. BACKGROUND
Joyce has served as the Chief of Police of the Wareham Police Department (“the Department”) since 1989. Slager owns and is the sole employee of a company which publishes two newspapers: the defendant, Wareham Observer and the Tri-Town Observer. The defendant Observer is a “small, local, independent, grass-roots, advocacy-oriented newspaper,” whose mission is the “pursuit of better government for Wareham residents.” It reports on issues of public concern and seeks to get residents involved by voting or petitioning public officials to consider such issues. A typical issue of the Observer primarily contains articles and commentary pieces. Slager contends that about fifty percent of the editorial content is commentary or opinion, often in the nature of a “call for action.” According to Slager, the Observer
publishes articles and commentary that are: (1) in connection with issues under consideration or review by the board of selectman or other town government, courts, or other governmental proceedings, (2) reasonably likely to encourage such consideration or review, (3) reasonably likely to enlist public participation in an effort to effect such consideration or review, or (4) are otherwise within the constitutional protection of the right to petition the government.
Joyce’s defamation claim against Slager and the Observer is based on three statements made in the Observer: a May 17, 2007 headline, a paragraph from *278 June 26, 2007 commentary column, and a sentence from a July 31, 2008 news item.
A.The May 17, 2007 Headline:
“Joyce defies court order: Police Chief refuses to return gun to officer”
A May 17, 2007 headline in the Observer stated “Joyce defies court order: Police Chief refuses to return gun to officer.” This headline accompanied an article regarding a lawsuit brought by Officer Karl Baptiste (“Baptiste”) against Joyce. Baptiste was terminated from his position at the Department in September 2004. His firearms license had lapsed as of July 2004. In August 2006, while Baptiste was appealing his termination, the Department issued an order requiring all officers to obtain and maintain active licenses to carry firearms. Baptiste later applied to the Department for a firearms license, but was denied. He filed a complaint in the District Court to appeal this denial. The Town of Wareham (“the Town”) eventually reinstated Baptiste, but conditioned the reinstatement on his success in the District Court. Baptiste won his firearms appeal in the District Court in April 2007 and the Court ordered that a license to carry a firearm be issued to Baptiste. When Baptiste returned to work at the Department on May 16, 2007, Joyce presented him with a letter stating that since he did not have a firearms license, he was not permitted to “carry on duty.” Within one month of his reinstatement, Baptiste applied for and received his firearms license in the normal course.
B.The June 26, 2007 Commentary Column: “The jig is finally up, chief’
Next at issue is a section of the June 26, 2007 commentary column entitled “The jig is finally up, chief.” This column was an edition of Slager’s regular “In This Corner” commentary column, on a page labeled as “Commentary." The “In This Corner” column is used by Slager to speak out and call for action as a journalist and citizen. This particular column addressed allegations of Joyce’s favoritism toward Town employees and their family members. Robert Maxim (“Maxim”), an Onset resident and the elected Chairman of the Prudential Committee of the Onset Fire District, reported to Joyce that once in 2006 and 2007 Town employees or their relatives had been subjected to motor vehicle stops or police were called to their home but then the incidents did not show up on police logs. Maxim obtained this information from listening to his police scanner and reading police logs appearing in the newspaper. The Department has a long-standing policy which requires officers to notify the Police Chief when an officer has any interaction with a Town employee or relative.
C.The July 31, 2008 News Item in the “Gov. 101" Section
Finally, Joyce takes issue with a July 31,2008 news item published in the Observer’s “Gov. 101" section. Previously Slager had published a stoiy regarding Joyce’s July 20, 2008 letter advising Crime Watch, a volunteer group in Wareham, that it was restricted from issuing parking tickets except in certain neighborhoods. The news item at issue here was a report from someone who attended an executive session with the Board of Selectmen (“the Board”) where the Board allegedly told Joyce to allow the group to continue all ticketing. Slager did not attend this meeting. Joyce contends that the Board did not order him to take specific action with regard to Crime Watch nor did it vote on this issue.
As a result of all these articles, the Observer has received feedback from readers and town officials, including Selectwoman Brenda Eckstrom (“Eck-strom”). Residents have written letters to the Observer and left comments on its website thanking it for talking about controversial issues, for informing them and asking Slager to look into other issues. Eckstrom also received calls from residents asking her to investigate issues addressed in the Observer. Specifically, after the “Joyce defies court order” article, police officers called Eckstrom regarding who is allowed to “cany on the badge” and a resident came to a Board meeting to request that Joyce be fired.
Joyce filed this case on September 19, 2008. The instant Special Motion to Dismiss was filed on November 24, 2008. Joyce filed an opposition on January 14, 2009. The court heard arguments on this motion on March 30, 2009.
III. DISCUSSION
A. Standard of Review for a G.L.c. 231, §59H Special Motion to Dismiss
The right to petition for redress of grievances is highly protected speech. Indeed, criticism of government is at the center of free speech as “speech concerning public affairs is more than self-expression; it is the essence of self-government.” Rosenblatt v. Baer, 383 U.S. 357, 375-76 (1927); Garrison v. Louisiana, 379 U.S. 64, 74-75 (1964). Debate on public issues should be uninhibited and robust and therefore can be sharp and bold and still enjoys protection under the Constitution. New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1974).
The Massachusetts anti-Strategic Lawsuit Against Public Participation (“anti-SLAPP”) Statute, G.L.c. 231, §59H, protects this right to petition. G.L.c. 231, §59H applies to civil claims that are “based on [a] parly’s exercise of its right of petition under the constitution of the United States or of the commonwealth.” The statute provides a mechanism for a special motion to dismiss SLAPP suits. SLAPP suits are meritless and are designed to “use litigation to intimidate opponents’ exercise of rights of petitioning and speech.” Duracraft Corp. v. Holmes Product Corp., 427 Mass. 156, 161 (1998). The anti-SLAPP statute provides “broad protection . . . from harassing litigation and the costs and burdens of defending against *279 retaliatory lawsuits.” Fabre v. Walton, 436 Mass. 517, 521 (2002).
To succeed on a special motion to dismiss under G.L.c. 231, §59H, “as a threshold matter to invoke the statute’s protection, [ ] the party seeking dismissal [must] demonstrate, through pleadings and affidavits, that the claims against it are ‘based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.’ ” Cadle Co. v. Schlichtmann, 448 Mass. 242, 249 (2007), quoting Duracraft, 427 Mass. at 166. G.L.c. 231, §59H states,
As used in this section, the words “a party’s exercise of its right of petition” shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encoúr-age consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
The first four categories listed in the statute include statements made to “influence, inform, or at the very least, reach governmental bodies — either directly or indirectly.” Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass.App.Ct. 600, 604-05 (2005). The fifth category listed is a catch-all category, showing that this list is not exclusive. Id. at 605 n.5. To determine whether a statement was within the right to petition, therefore, the court shall focus on “whether the communication ‘had the potential or intent to redress a grievance, or directly or indirectly to influence, inform, or bring about governmental consideration of the issue.’ ” North American Expositions v. Corcoran, 70 Mass.App.Ct. 411, 420 (2007), quoting Global NAPS, Inc. 63 Mass.App.Ct. at 607.
If the special moving party makes this threshold showing, the burden then shifts to the non-moving party to “demonstrate, again by pleadings and affidavits, that ‘(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party’s acts caused actual injury to the responding party.’ ” Cadle, 448 Mass. at 249, quoting G.L.c. 231, §59H (emphasis added). The standard for determining what constitutes reasonable factual support is steep but not insurmountable. Maxwell v. AIG Domestic Claims, Inc., 72 Mass.App.Ct. 685, 696-97 (2008). This burden is similar to showing that a claim is not presented in good faith or is wholly frivolous. Demoulas Super Markets, Inc. v. Ryan, 70 Mass.App.Ct. 259, 267-68 (2007).
B. Is Joyce’s Complaint “based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities”?
Joyce argues that none of Slager’s statements qualify as petitioning activity because they were made in order to support the Observer, which is a commercial enterprise. The Observer is free to its readers, but relies on commercial advertising to operate. Joyce contends that Slager made these sensational and allegedly false statements about him to boost the Observer’s readership and therefore its commercial revenues. Joyce argues that Cadle should be interpreted as barring commercial enterprises from enjoying the protections of a G.L.c. 231, §59H Special Motion to Dismiss. 448 Mass. at 250-51. Joyce alleges that Cadle stands for the proposition that petitioning activity must be made by someone acting as a private citizen. Id. Joyce also argues that no media defendant can enjoy the protections of a Special Motion to Dismiss. See Islamic Society of Boston v. Boston Herald, 2006 WL 2423287, at *9 (Mass.Super.Ct. July 20, 2006) [21 Mass. L. Rptr. 441],
Slager responds that G.L.c. 231, §59H has a broad reach and its protections extend to commercial entities, media or otherwise. See Duracraft, 427 Mass. 156; MacDonald v. Paton, 57 Mass.App.Ct. 290 (2003). Indeed, there has been no decision in Massachusetts declaring that a corporation is barred from bringing an anti-SLAPP Special Motion to Dismiss simply because it was a corporation. P.J. Keating Co. v. Roads Corp., 2008 WL 2745178 (Mass.Super.Ct. June 17, 2008) [24 Mass. L. Rptr. 212], G.L.c. 231, §59H was applied to protect commercial entities in Duracraft and Salvo v. Ottaway Newspapers, Inc., 1998 WL 34060940 (Mass.Super.Ct. May 13, 1998), among other cases. Cadle does not bar protection for all commercial entities. In Cadle, the statements in question were made by a lawyer on a website established solely to advertise and solicit clients for the lawyer’s firm. Although Slager’s newspaper may rely on advertising revenue to survive, Slager did not start his newspaper solely to solicit advertisers.
With regard to commercial media defendants specifically, Islamic Society does not strip them of the protections of G.L.c. 231, §59H. Any statements made regarding media defendants in Islamic Society are dicta since only the non-media defendants had moved to dismiss in that case. 2006 WL 2423287, at *1. In Salvo, relied upon by Slager, a defendant newspaper’s Special Motion to Dismiss was denied not because it was a media defendant, but because its statements were devoid of any reasonable factual support. 1998 WL 34060940, at *2-3.
Next, Joyce argues that Slager’s statements cannot qualify as petitioning activity because they were not made at the same time as ongoing active governmental review of the issues, but were made to encourage *280 review. Global NAPS, Inc., however, does not require that petitioning activity be conducted while the relevant issues are under active governmental review. If a statement has the “potential or intent to redress a grievance, or directly or indirectly to influence, inform, or bring about governmental consideration of the issue,” it can qualify for protection as petitioning activity. Global NAPS, Inc., 63 Mass.App.Ct. at 607. Petitioning activity does not even have to be motivated by a matter of public concern, let alone be undertaken simultaneously with active governmental review of an issue in order to be protected under G.L.c. 231, §59H. Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002).
Finally, Joyce argues that Slager made all of the statements at issue here with knowledge of or reckless disregard to their falsity. He contends that the statements are defamatory because they suggest that he does not respect the rule of law and that such statements harm his reputation because as the Police Chief he is empowered to enforce the law. Joyce also alleges that he suffered personal upset as a result of Slager’s statements. Slager contends that his statements were not defamatory because they all enjoy reasonable factual support. He further alleges that Joyce’s defamation claim is based solely on the exercise of his protected right to petition and is intended to intimidate, silence and punish Slager for articles that Joyce did not like. In analyzing whether a statement was an exercise of the right to petition, it must be examined in its totality in the context in which it was published. Lyons v. Globe Newspaper Co., 415 Mass. 258, 263 (1993).
First, the May 17, 2007 headline “Joyce defies court order: Police Chief refuses to return gun to officer” falls under the statutory definition of an exercise of the right to petition. This headline, and accompanying story, was intended to discuss a judicial proceeding, to encourage review of Joyce’s actions by the Town, and to enlist public participation in an effort to get the Town to review Joyce’s actions. This article did in fact cause police officers to report information to Eck-strom, resulting in Eckstrom attempting to hold Joyce accountable for his actions. Additionally, residents approached the Board and asked that Joyce be fired. This headline was an exercise of Slager’s right to petition. Joyce has presented no evidence to suggest that his defamation claim against Slager for this headline is based on any other substantial basis than Slager’s petitioning activity.
Next, the June 26, 2007 commentary column entitled “The jig is finally up, chief’ was an exercise of Slager’s right to petition because it was intended to comment on the ongoing review of Joyce by the Board, to encourage further review by the Board, and to enlist residents to demand further review. This column also encouraged Eckstrom to investigate Joyce’s activities and residents to ask that Joyce be fired. Again, Joyce has presented no evidence to show that his claim against Slager for this commentary column is based on any other substantial basis than Slager’s petitioning activity. This column, therefore, was an exercise of Slager’s right to petition.
Finally, the July 31, 2008 news item in the “Gov. 101" section was intended to report on ongoing review of Joyce by the Board, encourage further review by the Board, and enlist residents to demand further review of Joyce by the Board. Joyce has not shown that his defamation claim against Slager for this news item is based on any other substantial basis than Slager’s petitioning activity. This news item, therefore, was an exercise of Slager’s right to petition.
Slager has met his threshold burden of showing that Joyce’s claims are “based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Duracrafl, 427 Mass. at 166. Slager, therefore, can invoke the protection of G.L.c. 231, §59H.
C. Can Joyce demonstrate, by a preponderance of the evidence, that “(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party’s acts caused actual injury to the responding party”?
1. Was Slager’s exercise of his right to petition devoid of any reasonable factual support or any arguable basis in law?
Because Slager has met his threshold burden, the burden now shifts to Joyce to show, by a preponderance of the evidence, “again by pleadings and affidavits, that ‘(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party’s acts caused actual injury to the responding party.’ ” Cadle, 448 Mass. at 249, quoting G.L. 231, §59H. In his attempt to show that Slager’s statements had no reasonable factual support, Joyce submitted affidavits by himself and the executive officer for the Wareham Police Department, Lieutenant Irving I. Wallace.
To counter Joyce’s arguments, Slager has presented affidavits by himself, Baptiste, Maxim and Eckstrom to show that his statements had a reasonable basis in fact. Further, Slager notes that a statement is protected under G.L.c. 231, §59H if it had reasonable factual support at the time it was made, even if it is later found to be false. Wenger v. Aceto, 451 Mass. 1, 6 (2008). Slager also denies that his stories contained any inaccuracies, but notes that there can be no liability in libel for minor inaccuracies if the story in question is substantially correct. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516-17 (1991). Slager also notes that Joyce never asked him to correct or redact any of the statements at issue here.
First, Joyce contends that the May 17, 2007 headline “Joyce defies court order: Police Chief refuses to return gun to officer” has no basis in fact because he *281 was following the District Court’s order. The order did not require Joyce to expedite Baptiste’s application for the firearms license. Baptiste applied and received the firearms license in the normal course, within one month of his reinstatement. The court order also did not address whether Joyce had to permit Baptiste to carry a firearm while on duty, whether or not he had a firearms license. Finally, Joyce notes that the Department had issued new firearms and Joyce did not want Baptiste to carry the new firearms until he was properly trained to use them.
Slager acquired the information supporting this headline and accompanying story by attending some of Baptiste’s court hearings, reviewing the court order, interviewing Baptiste and his attorney, and reviewing the memo from Joyce to Baptiste. A plain reading of the documents reviewed by Slager supports the headline. The District Court ordered that “the license to carry a firearm to [Baptiste] be issued.” The letter written to Baptiste from Joyce states “[y]ou do not possess a License to Carry Firearms nor are you permitted to ‘carry on duty.’ ” The letter does not discuss any steps that Baptiste needed to take in order to regain his license and carry a firearm while on duty. A plain reading of these documents together creates at least some reasonable factual support for Slager’s headline. Any minor inaccuracies found in hindsight are protected under law if the statement was reasonably supported by fact at the time it was made. Joyce fails, therefore, to meet his burden of showing by a preponderance of the evidence that this headline is not supported by any reasonable factual support.
Next, Joyce argues that the June 26, 2007 commentary column entitled “The jig is finally up, chief’ has no basis in fact because there is a long-standing policy to inform the Police Chief about all interaction between the Department and a town employee or relative. Joyce also contends that this story is based on hearsay. Slager, however, has presented an affidavit from Maxim, his source for this column. Maxim states that he heard the calls, via the police scanner, regarding town officials or their relatives and then noted their absence from police logs printed in the newspaper. This story had some factual support at the time it was published and whether parts of it are found to be inaccurate later is irrelevant. Again, Joyce fails to show that this column is not supported by any reasonable factual support.
Finally, Joyce contends that the July 31,2008 news item in the “Gov. 101" section is not supported by fact because Slager did not attend the Board meeting at which the statements were purportedly made. Joyce was in attendance at the executive session in question and claims that the Board did not order him to take specific action with regard to Crime Watch nor did it vote on this issue. He also argues that the Board’s action on such an issue is meaningless because the Town Administrator is the only one who has direct supervisory power over him. Therefore, Joyce alleges that Slager’s comment that he ignored an order from the Board is not based in fact.
Slager stresses the language of the news item, which stated “Following an executive session with selectmen last week, Joyce was told to reinstate Crime Watch’s duties” (emphasis added]. Slager contends that Joyce is misconstruing the news item by arguing that it stated that the Board ordered him to act. The word “told,” contained in the news item, implies that this could have been a passing comment made by a Selectman at the meeting and was not a formal order or action of the Board. Joyce has not met his burden of proving that such a statement was not made at that meeting. He cannot meet his burden by simply stating conflicting facts without any support because he is not entitled to any inferences in his favor here. Paton, 57 Mass.App.Ct. at 295; Baker v. Parsons, 434 Mass. 543, 553 (2001). Joyce has again failed to show that this news item is not supported by any reasonable factual support.
Joyce does not address whether Slager’s statements had any arguable basis in law. Slager’s statements have at least an arguable basis in law under New York Times v. Sullivan, which protects statements about public officials. 376 U.S. at 279-80. Further, commentary is legally protected as an expression of opinion. Lyons, 415 Mass. 258.
In the end, Joyce cannot meet his burden of showing, by a preponderance of the evidence that “(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party’s acts caused actual injury to the responding party.” G.L.c. 231, §59H.
2. Did Slager’s acts cause Joyce actual injury?
Because Joyce did not meet his first burden under G.L.c. 231, §59H, this court does not have to examine whether he has proved that Slager’s acts caused him actual injury. For the sake of completeness, however, such a discussion follows.
Joyce contends that he suffered injury to his reputation and personal upset as a result of Slager’s statements. He has not presented any evidence to support these claims of injury. With regard to allegations of damage to his reputation, Joyce should have presented evidence to establish what his reputation was before Slager’s statements were made. Salvo, 1998 WL 34060940, at *4. Only then could the court determine whether Slager’s statements caused a damaging change to Joyce’s reputation. Id. Similarly, mental suffering is compensable, but Joyce has presented no medical records or any competent doctor’s affidavits to support his claim of personal upset. Id. Joyce has not met his burden of proving, by a preponderance of the evidence, that Slager’s statements caused him actual injury.
*282 IV. ORDER
It is therefore ORDERED that Defendants Robert Slager’s and the Wareham Observer’s Special Motion to Dismiss Pursuant to G.L.c. 231, §59H is ALLOWED.