Tucker, Richard T., J.
This is a civil action brought by Howard Fease, Trustee of Burdon Pond Realty Trust (Plaintiff), seeking monetary damages from defendants Gregory Vandenakker, Rebecca Vandenakker, West End Creamery, Inc., and West End Dairy, LLC (Defendants), whom he alleges in his complaint made libelous statements against him. Plaintiff also seeks a declaratory judgment regarding his use of Burdon Pond dam. Defendants move to dismiss Plaintiffs complaint in a special motion brought pursuant to G.L.c. 231, §59H, the anti-SLAPP statute, contending their actions constituted petitioning within the meaning of the statute.
BACKGROUND
After a hearing and a review of the record in this matter the following facts are established. Plaintiff is the owner of a portion of Burdon Pond and the dam that sits on it. Defendants own property that abuts Burdon Pond, where they operate a farm, miniature golf course, food service establishment, and, in the fall, a com maze. Sometime in 2011, Plaintiff installed flashboards at the Burdon Pond dam. Defendants claimed this caused flooding that damaged their crops and property. Defendants subsequently reported Plaintiff to the Northbridge Conservation Commission (“Commission”) and the Massachusetts Department of Environmental Protection (“DEP”). In May 2011, defendant Gregory Vandenakker appeared before the Commission to discuss the issue.
*229 Defendants state Mr. Vandenakker responded in September 2011 to inquiries from a reporter from the Worcester Telegram & Gazette newspaper who then wrote a story about the controversy surrounding the Burdon Pond dam. Defendants further claim that in response to inquiries from the general public regarding the flooding and damage they published comments on the Internet. Defendants also posted information and a petition at their business seeking support from the generad public in reducing the water level at Burdon Pond.
Meanwhile, DEP in a Unilateral Administrative Order (“UAO”) dated June 3, 2011 issued a ruling in connection with Plaintiffs admitted work on the Burdon Pond dam. DEP ordered Plaintiffs to cease work on the dam, remove the flashboards, open the dam’s gate valve to lower the water level to the spillway, and not perform any other work on the dam without regulatoiy approval.[1] Plaintiff appealed the UAO to the DEP.
Before DEP issued a final order, Plaintiff filed this suit in February 2012. In Count I, Plaintiff sought a declaratory judgment, contending a “dispute has arisen between the Plaintiff and Defendants as to the legal effect that the Plaintiffs ownership of Burdon Pond, and the dam which controls Burdon Pond, has upon the water level of Burdon Pond, as well as the rights and responsibilities of the Plaintiff as owner of Burdon Pond and of the Defendants as direct abutters to Burdon Pond.” Plaintiff argued it has the right to control the flow of Burdon Pond through the dam and in ultimately controlling the height of Burdon Pond.[2] Plaintiff stated in its complaint that Defendant’s reports to DEP and the Commission are “an attempt to dictate the operations of the Burdon Pond Dam.”
Plaintiffs second-count alleged libel for “derogatoiy and untrue” statements published in a newspaper, on Defendants’ website, and posted at Defendants’ business. Specifically, Plaintiffs pointed to three postings on the West End Creamery website.[3] An October 27, 2011, posting stated, “We really hope the Judge throws the book at this guy in the Mass. DEP’s court action against him.” Another, from September 30, 2011, stated, “Yesterdays Worcester Telegram featured an article explaining the flooding situation caused the by the dam owner (no pun) illegally raising the water level in the pond which borders our farm.” Finally, a September 16, 2011 posting stated:
Also, good news is that two state agencies (Mass DEP and the DCR Office of Dam Safely) are taking action against the owner of the pond’s dam for causing the high water conditions. His actions of illegally installing flashboards at the dam has raised the water level more than 20" at times this year. This has caused serious flooding conditions to portions of our farm and is altering wetland areas along the shoreline including killing trees and other vegetation. Stop by the farm sometime to read more about this and to see how you can help.
After Plaintiff filed the complaint in this case, DEP issued a final decision March 8, 2012 adopting the recommendations of the presiding officer in affirming the UAO. The final decision stated Plaintiff had a right to file a motion for reconsideration of the decision or file an appeal with the Superior Court pursuant to M.G.L.c. 30A, §14(1) within 30 days. Plaintiff chose to file a motion for reconsideration, which is currently pending.
In April 2012, Defendants filed their answer to Plaintiffs complaint along with counterclaims alleging nuisance and trespassing. On April 1.7, 2012, this court issued a preliminary injunction enjoining Plaintiff from altering the dam in a manner that would cause flooding on Defendants’ land.[4] Defendants filed a special motion to dismiss pursuant to M.G.L.c. 231, §59H on May 30 2012, and a hearing was held July 31,2012.
DISCUSSION
Defendants allege in their special motion that the claims as set forth in Plaintiffs complaints are based upon petitioning activities protected by G.L.c. 231, §59H. Defendants, therefore, move that Plaintiffs complaint be dismissed.
In order for a defendant to prevail under a special motion, it must be established that the plaintiffs complaint is “based on [the defendant’s] petitioning activities alone and [has] no substantial basis other than or in addition to [the defendant’s] petitioning activities.” Duracraft Corp. v. Holmes Prod. Corp., 427 Mass. 156, 167-68 (1998). The statute defines “a party’s exercise of its right to petition” as
any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body, or any other government proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement or comments within constitutional protection of the right to petition government.
M.G.L.c. 231, §59H.
“Consistent with the expressed legislative intent, ‘petitioning’ has been consistently defined to encompass a ”veiy broad" range of activities in the context of the anti-SLAPP statute." N. Am. Expositions Co. Ltd. P’ships v. Corcoran, 452 Mass. 852, 861-62 (2009), quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161-62 (1998). “Petitioning includes all ‘statements made to influence, inform, or at the very *230 least, reach governmental bodies — either directly or indirectly.’ ’’ Corcoran, 452 Mass. at 862, Quoting Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass.App.Ct. 600, 605 (2005).
If a defendant establishes the plaintiffs complaint is based on “petitioning activities alone,” then the court shall grant the special motion to dismiss unless the plaintiff shows that: “(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving parly’s acts caused actual injury to the responding party.” M.G.L.c. 231, §59H.
Here, this court finds as a threshold matter that Defendants’ activities at issue constituted petitioning activity as described and defined by the statute.
Statements to newspapers regarding matters under consideration by government entities have previously been considered petitioning activity. See e.g. Wynne v. Creigle, 63 Mass.App.Ct. 246, 253-54. (taken in context, defendant’s statements to newspaper that were “mere repetition” of statements made in connection with government investigation “also possessed of the characteristics of petitioning activity”). Here, Defendants’ statements published in the newspaper reiterated statements he had already made to the Commission and DEP about the ongoing controversy surrounding the Burdon Pond dam. In other words, the substance of the statements had been “made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding.” M.G.L.c. 231, §59H. Further, they were also “made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding.” Id. Therefore, Defendants’ statements published in the newspaper were petitioning activity.
Similarly, in at least one case, website postings were considered petitioning activity that allowed for a dismissal under the anti-SLAPP statute. See MacDonald v. Paton, 57 Mass.App.Ct. 290, 295 (2003). Here, Defendants maintained the online messages were in response to inquiries about the flooding at its property and ongoing proceedings against Plaintiffs. The statement that Defendants “hope the Judge throws the book at this guy in the Mass. DEP’s court action against him,” as well as the post noting the newspaper had published an article about the dispute were each “made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding.” M.G.L.c. 231, §59H. Further, the lengthy September 16, 2011 web posting regarding the controversy and directing people to Defendants’ business for further information and a petition was not only “made in connection with an issue under consideration,” it also was “reasonably likely to enlist public participation in an effort to affect such consideration.” Id. Summarily, the postings on the Internet constituted petitioning activity.
The information posted at the business explained the ongoing controversy and included a petition for members of the public to sign requesting the water level in Burdon Pond be lowered. Defendants properly refer to this activity as constituting the “very essence of petitioning activities protected” by the anti-SLAPP statute. Again, Defendant’s conduct here was both “reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body, or any other governmental proceeding” and “reasonably likely to enlist public participation in an effort to effect such consideration.” As such, the information posting and petition seeking at Defendants’ business constituted petitioning activiiy.
Plaintiff incorrectly contends the anti-SLAPP statute does not apply to Defendants because their activities were for commercial — not petitioning — purposes. Plaintiffs rely heavily on Cadle Co. v. Schlichtmann, 448 Mass. 242, (2007), in making that argument. In Cadle, the court concluded an attorney’s posts on his website alleging illegal business practices against a collection firm were not exclusively petitioning activities. Id., at 250-52. The court concluded the attorney posted the statements “not as a member of the public who had been injured by these alleged practices, but as an attorney advertising his legal services.” Id., at 250. The court concluded the “website was, in essence, designed to disseminate to the public information about [the collections company] and, by doing so, to attract clients to [the attorney’s] law practice.” Id. Therefore, the court declined to dismiss the case under the anti-SLAPP statute. Id., at 254. Here, such a scenario is not present. Defendants were in fact members of the public who claimed injury as a result of Plaintiffs conduct and were engaged in petitioning activities in the hopes the government would stop the injurious conduct.
That Plaintiffs conduct apparently harmed Defendants’ business may have provided a motive for their petitioning activities. But that is of little concern because “the fact that the speech involves a commercial motive does not mean it is not petitioning.” N. Am. at 863, quoting Office One, Inc. v. Lopez, supra, at 122, 769 N.E.2d 749 (in determining whether conduct is based on petitioning activity alone, “motive behind the petitioning activity is irrelevant”). Summarily, Plaintiffs’ contention that Defendant’s activities were commercial, and not petitioning, is without merit.
Having established Defendants’ activities were solely petitioning, the burden now shifts to Plaintiff to prove Defendants’ “right to petition was devoid of any reasonable factual support or any arguable basis in law” and their “acts caused actual injury to the responding party.” M.G.L.c. 231, §59H.
Plaintiff puts forth little argument as to the first part of its burden, except to state that there was no court action pending against Plaintiff at the time of the October 27, 2011 web posting, in which Defendants *231 stated “[w]e really hope the Judge throws the book at this guy in the Mass. DEP’s court action against him.” While it is true there were no court proceedings involving Plaintiff at the time, there were DEP ongoing administrative proceedings. Defendant’s use of the term “court” instead of “administrative appeal” and “judge" instead of “Chief Presiding Officer” is an error so trifling that it does not make Defendants’ right to petition “devoid of any reasonable factual support or any arguable basis in law.” The key fact here is that there were ongoing proceedings that Defendants hoped would result in an adverse ruling against Plaintiff. Such statements were petitioning activity because they were “made to influence, inform, or at the veiy least, reach governmental bodies — either directly or indirectly.” Corcoran, 452 Mass. at 862, quoting Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass.App.Ct. 600, 605 (2005). Further, they were “statement(s) or comments within constitutional protection of the right to petition government.” M.G.L.c. 231, 59H.
As Plaintiff has not met the first part of his burden, this court need not analyze whether Defendants’ “acts caused actual injury to the responding parly.” Having said that, Plaintiffs complaint states his “reputation in the general community, as well as [his] ability to live without harassment and interference has been adversely affected.” Plaintiff offers no further specifics regarding actual injuries and, therefore, would not have satisfied the second part of its burden.
For the foregoing reasons, Count II of the complaint, the libel claim, is dismissed pursuant to the antiSLAPP statute. Count I, the declaratory judgment claim, however, requires further analysis.
Plaintiff contends the declaratory judgment is unrelated to any potential petitioning activities, but was brought because “[a]n actual, existing and bona fide controversy exists between [Plaintiff] and [Defendants] as to their legal relations in respect to Burdon Pond, the dam which controls Burdon Pond, and the height and water level of Burdon Pond.” Be that is it may, Plaintiffs argument glosses over the fact that the suit arises solely out of Defendant’s petitioning activity. Plaintiffs complaint states Defendants “made complaints . . . regarding the Plaintiffs operations on and use of the dam which controls Burdon Pond in an attempt to dictate the operation of Burdon Pond Dam.” Plaintiff goes on to claim Defendants’ complaints resulted in a DEP investigation that led to the adverse UAO. Plaintiffs complaint, therefore, demonstrates that the controversy stems solely from Defendants’ petitioning activity.
Plaintiff relies largely on Garabedian v. Westland, 59 Mass.App.Ct. 427, 432-33 (2003), in arguing the declaratory judgment should not be dismissed under the anti-SLAPP suit. However, the critical difference between this case and Garabedian is that the court there found some of defendant’s activities were not petitioning and therefore declined to dismiss the case under the anti-SLAPP statute. Id. This court has determined Defendants’ activities in this case were petitioning, which distinguishes it from Garabedian. More relevant here is North America, 452 Mass. at 868, where the court dismissed the declaratory judgment claim because it “arose solely” out of the defendant’s petitioning activities. “To allow the addition of a claim for declaratory relief to deprive the defendants of their immunity from suit under the anti-SLAPP statute would defeat the purpose and intent of the statute to protect against harassment and the burden of litigation.” Id.
For the foregoing reasons, Count I, the declaratory judgment claim, is dismissed under the anti-SLAPP statute.
Further, even absent the anti-SLAPP statute, the declaratory judgment claim should be dismissed because Plaintiff has not exhausted its administrative appeals. In essence, DEP’s final order upholding the UAO ordered Plaintiff to dismantle unauthorized work at the dam and to seek permission from the proper regulatory authorities before engaging in any future work. Plaintiff represented to this court that DEP has stated, but has not put in writing, that it would not take any action on Plaintiffs pending motion to reconsider because of the preliminary injunction issued by this court.[5] Be that as it may, Plaintiff, despite its assertions to the contrary, is far from left without further avenues to determine its rights relative to the Burdon Pond dam. This court is not aware of anything estopping Plaintiff from seeking approval from the appropriate regulatory authorities regarding the maintenance or operation of the dam. Therefore, Plaintiff s proper course of action is to seek permission from such regulatory authorities. Plaintiff would be allowed to seek relief in the courts only after such an administrative process has concluded. Consequently, the merits of any claims regarding the maintenance or operation of the Burdon Pond dam are not properly before this court at this time. Similarly, the merits of the defendants’ counterclaims are not addressed in this decision.
ORDER
For the foregoing reasons, the special motion to dismiss under M.G.L.c. 231, §59H is ALLOWED.

 The UAO stated: “Effective immediately, [Plaintiff] shall cease and desist from all activities on the Property subject to jurisdiction under the [Massachusetts Wetlands Protection Act] except in compliance with the [UAO] or a valid Order of Conditions from the Northbridge Conservation Commission”; “Effective immediately, [Plaintiff] shall open the gate valve on the dam to lower the water level of the Pond, and shall remove the top flash board on the Burdon Pond dam spillway. [Plaintiff] shall keep the gate valve open until the water level of the pond is equal to height of the concrete spillway”; “As the remaining flash boards are exposed by the lowering water level [Plaintiff] shall completely remove each flashboard from the Burdon Pond dam spillway. [Plaintiff] shall complete removal of all the flashboards from the spillway within ten *232 (10) calendar days of the date of this ORDER”; “Immediately upon removal of final flashboard, [Plaintiff] shall close the gate valve on the dam and shall maintain the water level at the top of the concrete spillway”; “[Plaintiff] shall comply with the filing requirements of M.G.L.c. 131, §40 and the wetlands regulation at 310 CMR 10.00 for any future work on the dam and or installation of any flashboards. Specifically, [Plaintiff] shall file a Request for Determination of Applicability under 310 CMR 10.05(3) or a Notice of Intent under 310 CMR 10.05(4) before undertaking any activity that may affect an area subject to jurisdiction under the Wetlands Protection Act. If [Plaintiff] believe[s] any activity would be exempt from the Wetlands Protection Act, [Plaintiff] shall file a Request for Determination with the Northbridge Conservation Commission, which will determine whether any exemption would apply to the proposed activity.”

 Specifically, Plaintiff points to language in the deed for the pond, which states, in part, that Plaintiff has “the privilege of flowing . . . Burdon Pond to high water mark caused by a 10" flash board on waste way flume.”

 Defendants contend the postings were not made on West End Creamery's website, but on its Facebook page, which linked to West End Creamery's website.

 The language of the preliminary injunction mirrored that of the DEP order against Plaintiff.

 It is again worth noting that the preliminary injunction mirrors the language of the DEP order that was already in place. Further, DEP’s final decision informed Plaintiff of its rights to either file a motion to reconsider or file an appeal with the Superior Court pursuant to M.G.L.c. 30A, §14(1). Plaintiff apparently chose not to pursue a 30A claim.