MARK A. MACDONALD *vs.* ELSA L.M. PATON & others.[1]

No. 01-P-323.

Worcester. October 9, 2002. - February 5, 2003.

Present: CYPHER, SMITH, & GRASSO, JJ.

*Libel and Slander. "Anti-SLAPP" Statute. Practice, Civil,* Motion to dismiss.

Discussion of the "anti-SLAPP" statute, G. L. c. 231, § 59H, and the burden of proof when a party makes a special motion to dismiss under the statute. [291-293]

The judge in a civil action alleging libel and intentional infliction of emotional distress erred in denying the defendant's special motion to dismiss under the "anti-SLAPP" statute, G. L. c. 231, § 59H, where the claims against the defendant were based entirely on her petitioning activities, and where the plaintiff did not show that the defendant's petitioning activities were devoid of any reasonable factual support or arguable basis in law or that the activity had caused the plaintiff actual harm; moreover, the defendant was entitled to costs and reasonable attorney's fees. [294-296]

CIVIL ACTION commenced in the Superior Court Department on September 14, 1999.

A special motion to dismiss was heard by *Timothy S. Hillman,* J., and a motion for reconsideration was heard by *John S. McCann,* J.

An application for leave to prosecute an interlocutory appeal was granted by *Greenberg,* J.

*Robert A. Bertsche* (*David E. Plotkin* with him) for Elsa L.M. Paton.

*Christopher M. Uhl* for the plaintiff.

SMITH, J. The plaintiff, Mark A. MacDonald, filed a complaint

---

[1]Athol Daily News, Richard J. Chase, Jr., and Barney Cummings. After this appeal was initiated, these separate defendants moved for summary judgment. That motion was granted, and on May 15, 2002, a judgment entered dismissing the plaintiff's complaint as to these three defendants. The plaintiff has filed an appeal from that judgment which is not the subject matter of this appeal.

in the Superior Court alleging libel and intentional infliction of emotional distress by four defendants: the Athol Daily News; its publisher, Richard Chase, Jr.; its editor, Barney Cummings; and the appellant, Elsa Paton.

Paton filed a special motion to dismiss the plaintiff's complaint pursuant to G. L. c. 231, § 59H, popularly known as the "anti-SLAPP" statute.[2] She also filed a motion to dismiss the plaintiff's complaint for failure to state a claim, the arguments of which were incorporated into the special motion to dismiss filed under § 59H. The plaintiff opposed both motions. After a hearing, a Superior Court judge denied Paton's special motion, and another Superior Court judge denied Paton's motion for reconsideration. There was no ruling on Paton's motion to dismiss for failure to state a claim.

Paton sought interlocutory review of the lower court rulings from the single justice of this court. The single justice granted the petition for interlocutory review of the Superior Court orders. After the single justice granted the petition in this matter, the Supreme Judicial Court in *Fabre* v. *Walton*, 436 Mass. 517, 520-522 (2002), ruled that there is a right to interlocutory review in the Appeals Court when a trial judge has denied a special motion to dismiss pursuant to G. L. c. 231, § 59H.

*Special motions to dismiss under G. L. c. 231, § 59H.* "SLAPP suits have been characterized as 'generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so.' " *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. 156, 161 (1998), quoting from *Wilcox* v. *Superior Ct.*, 27 Cal. App. 4th 809, 816-817 (1994). "The legislative history in Massachusetts demonstrates that in response to the problem of SLAPP suits the Legislature intended to enact very broad protection for petitioning activities." *Id.* at 162. "In [enacting G. L. c. 231, § 59H], the Legislature . . . did not address concerns over its breadth and reach, and ignored its potential uses in litigation far different from the typical SLAPP suit." *Id.* at 163.

Since its enactment, several decisions have discussed the breadth of G. L. c. 231, § 59H. It applies to private parties of

---

[2]"The acronym 'SLAPP' stands for 'Strategic Lawsuit Against Public Participation.' " *Ayasli* v. *Armstrong*, 56 Mass. App. Ct. 740, 748 (2002).

limited means. See *McLarnon* v. *Jokisch*, 431 Mass. 343, 344-345 (2000) (dispute between former spouses); *Vittands* v. *Sudduth*, 49 Mass. App. Ct. 401, 413-415 (2000) (property dispute between private parties); *Donovan* v. *Gardner*, 50 Mass. App. Ct. 595, 597-602 (2000) (private dispute between neighboring parties).

In *Baker* v. *Parsons*, 434 Mass. 543, 551 (2001), the court ruled that G. L. c. 231, § 59H, applies to defamation actions ("defamation most popular SLAPP cause of action"). Furthermore, the court held that the anti-SLAPP statute applies regardless of the timing of the plaintiff's suit. *Id.* at 549 n.11.

An important feature of the anti-SLAPP statute is the availability of a unique procedural tool — the special motion to dismiss. In order to assert protection for her petitioning activities, the special movant under G. L. c. 231, § 59H, must "make a threshold showing through the pleadings and affidavits that the claims against [her] are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. at 167-168. As used in the statute, the exercise of the right to "petition" refers to, inter alia, "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; [or] any statement reasonably likely to enlist public participation in an effort to effect such consideration." G. L. c. 231, § 59H, as inserted by St. 1994, c. 283, § 1.

Once the special movant makes this initial showing, the burden shifts to the nonmoving party to show, by a preponderance of the evidence, that "(1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party." G. L. c. 231, § 59H. See *McLarnon* v. *Jokisch*, 431 Mass. at 349; *Baker* v. *Parsons*, 434 Mass. at 553-554. We review a judge's decision regarding a special motion to dismiss to determine whether

there was an abuse of discretion or error of law. *McLarnon* v. *Jokisch, supra. Baker* v. *Parsons, supra* at 550. *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 121 (2002).

*Factual background.* We summarize the undisputed background facts that led up to the filing of the plaintiff's complaint, with emphasis on the plaintiff's claims against Paton. The plaintiff, a retired State police officer, lived in Athol and was one of Athol's five elected selectmen from 1995 to 1997. In 1996, as a selectman, the plaintiff became involved in certain politically controversial decisions regarding a new police station and an ambulance service in Athol. In April of 1996, the selectmen, including the plaintiff, withdrew their approval of one site for the police station and favored another site. The plaintiff and the town's police chief, who both served on the police station site committee, defended the decision. After the decision, the Athol Daily News referred to the plaintiff as a "Gestapo agent" and also printed that he may have accepted a bribe for his vote regarding the town's ambulance service.

At that time, the defendant Paton, a resident of Athol, operated an Internet web site that reported on local affairs in Athol and the surrounding community. After publication of the article in the Athol Daily News referring to the plaintiff as a "Gestapo agent," Paton, while the plaintiff was a selectman, ran the following definition on her web site:

> "nazi — not see 1. A political affiliation whose platform espouses military dictatorship, racial cleansing, eugenics and intolerance. 2. In Athol, a term sometimes used to describe certain selectmen who wish to ignore most issues except for those which place them firmly in bed with chiefs of police. (see Old Macdonald had a gun, E - I - E - I - Oh shit)."

After publication of the statements in the Athol Daily News and the definition on Paton's web site, the plaintiff sought to be reelected as a selectman, but lost the election. He then brought this complaint against Paton and the other defendants.

In her special motion to dismiss the plaintiff's complaint, Paton argued that the plaintiff's claims against her had to be dismissed against her pursuant to G. L. c. 231, § 59H, because (1) the claims were based on her right to petition the govern-

ment; (2) the plaintiff could not demonstrate that Paton's exercise of this right was "devoid of reasonable factual or legal support"; and (3) the plaintiff had not suffered actual injury as a result of Paton's petitioning activities. Paton submitted an affidavit and eleven exhibits with her motion.

We summarize the contents of Paton's special motion and affidavit. Paton works as a technology aide in the public schools. From 1997 to 1999, she maintained an Internet web site that she called the "Athonics Home Page." The web site was an interactive public forum on issues relating to Athol town governance, including education funding and municipal use of tax dollars. The web site included information on education reform, a citizen letters section, cartoons, quotes, a link inviting public participation by electronic mail (e-mail), and satirical articles.

One portion of the web site was called "The First Dictionary of Athonics." It was an interactive feature of the web site and Athol citizens contributed by e-mail many of the proposed dictionary entries. After the decision in regard to the police building was made and while the plaintiff was still a selectman, one citizen sent by e-mail to the web site the definition of "nazi" which is the subject of the plaintiff's complaint against Paton.

The plaintiff filed his opposition to Paton's special motion to dismiss and his memorandum supporting his opposition. The plaintiff did not submit any affidavit in opposition to Paton's affidavit.

*Discussion.* In denying Paton's special motion, the Superior Court judge ruled that G. L. c. 231, § 59H, did not apply to the plaintiff because he was a private party of modest means as is Paton.[3] The judge also ruled that, even if the statute applied to the plaintiff, the special motion was denied because the plaintiff "may be able to show that Paton's petition is devoid of any reasonable facts." Finally, the judge held that the statute does not apply to a libel claim, because the statute does not create an absolute privilege and the plaintiff may prove that "Paton published her remarks with actual malice."

---

[3]Parenthetically, as to the plaintiff's status as a private party in the underlying defamation suit, see *Lane* v. *MPG Newspapers*, 438 Mass. 476, 482-483 (2003).

Paton claims that the Superior Court judge erred in holding that the anti-SLAPP statute does not apply to private parties of modest means; by applying the incorrect standard of review; and by holding that libel claims are not subject to the anti-SLAPP statute. Paton also argues that this court should grant her special motion to dismiss and award her attorney's fees and costs.

At the time he made his decision, the Superior Court judge did not have the benefit of several of the decisions that we cited earlier in this opinion. Those decisions demonstrate that the judge's decision was in error. It has been firmly established that the anti-SLAPP statute can be invoked where both parties are persons of modest means and that it is applicable to defamation actions. The judge also misconstrued the allocation of the burden of proof on special motions to dismiss by applying the standard used under a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).

We agree with the judge, however, that the claims against Paton were, in fact, based entirely on her petitioning activities. In her affidavit in support of her special motion to dismiss, Paton described her web site as follows: "I conceived of the Web site as a forum for speech by citizens about issues of public and political concern in Athol. Although I wrote some of the content, much of the content was contributed by others who provided submissions to me by e-mail. In that sense, the Web site served as a technological version of a meeting of citizens on the Town Green, a space where concerned individuals could come together to share information, express political opinions, and rally on town issues of concern to the community." Paton's affidavit, which was accompanied by eleven exhibits and which described her web site, met her threshold burden of establishing that the plaintiff's claims were based on Paton's petitioning activities. See *Duracraft Corp.* v. *Holmes Prods. Corp.*, 427 Mass. at 167-168. See also *Office One, Inc.* v. *Lopez*, 437 Mass. at 122. Contrast *Ayasli* v. *Armstrong*, 56 Mass. App. Ct. 740, 748-749 (2002) (threshold burden of demonstrating that claims were based solely on petitioning activities was not met).

The plaintiff, in turn, did not provide any affidavits or other evidentiary materials to show, "by a preponderance of the

evidence, that (1) [Paton's] petitioning activity [was] devoid of any reasonable factual support or any arguable basis in law, and that (2) the activity caused [the plaintiff] actual harm." *Office One, Inc.* v. *Lopez, supra* at 123. Therefore, we hold that it was error for the judge to deny Paton's special motion to dismiss.

Under the anti-SLAPP statute, once a court grants a special motion to dismiss, the moving party is awarded costs and reasonable attorney's fees. G. L. c. 231, § 59H. A court has no discretion whether to grant costs and reasonable attorney's fees; under the statute the grant of both is mandatory. *McLarnon* v. *Jokisch*, 431 Mass. at 349-350. *Office One, Inc.* v. *Lopez, supra* at 126. Such a grant also includes appellate fees and costs. *McLarnon* v. *Jokisch, supra* at 350. *Fabre* v. *Walton*, 436 Mass. at 525.

The order of the Superior Court is reversed, and the case is remanded for the entry of a new order consistent with this opinion and including an award of costs and reasonable attorney's fees as required by G. L. c. 231, § 59H. In addition, Paton may apply to the single justice of this court for an award of appropriate attorney's fees and costs in connection with the appeal. See *McLarnon* v. *Jokisch, supra.*

*So ordered.*