APPEALS COURT 
 
 SCOTT LUCEY vs. NEIL KINNON

 
 Docket:
 24-P-968
 
 
 Dates:
 September 3, 2025 – December 15, 2025
 
 
 Present:
 Neyman, Ditkoff, & Englander, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 "Anti-SLAPP" Statute. Libel and Slander. Constitutional Law, Right to petition government. Practice, Civil, Motion to dismiss.
 
 

             Civil action commenced in the Superior Court Department on November 1, 2023. 
            A motion to dismiss and a special motion to dismiss were heard by John P. Pappas, J. 
            Scott Lucey, pro se.
            Howard M. Cooper (Charlotte L. Bednar also present) for the defendant.
            ENGLANDER, J.  The defendant Neil Kinnon insulted the plaintiff, Scott Lucey, on the webpage for a Facebook group known as "Malden (MA) Politics."  Specifically, in responding to a comment that Lucey had posted on June 7, 2023, Kinnon stated,
"I'm beginning to wonder if you are capable of reading.  Might want to read again and anybody who would hire you to be their attorney God Bless them, because someone must have taken the Bar exam for you" (emphasis added).
            Lucey brought this defamation action against Kinnon, claiming that the emphasized words constituted an injurious, false statement of fact.  In response, Kinnon filed two motions to dismiss.  In the first motion, under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974) (rule 12 [b] [6]), Kinnon argued that the defamation claim failed because given the circumstances as a whole, a reasonable person would not have understood his statement as a statement of actual fact.  In the second motion, under the "anti-SLAPP" statute, G. L. c. 231, § 59H, Kinnon argued that his statement was protected petitioning activity, in that the statement was made as part of a communication intended to influence the actions of the Malden city council with respect to pending zoning legislation.  A Superior Court judge dismissed Lucey's complaint pursuant to rule 12 (b) (6), and also denied Kinnon's motion under the anti-SLAPP statute.
            The parties now cross-appeal, and we affirm as to both motions.  As to the rule 12 (b) (6) motion, Kinnon's statement is not actionable, because it cannot reasonably be understood as a statement of actual fact.  As to Kinnon's anti-SLAPP motion, while it presents an interesting question, we conclude that Kinnon's insult does not qualify as petitioning activity under the statute.  We accordingly affirm the judgment.
            Background.  According to Lucey's complaint,[1] Lucey and Kinnon have known each other for years, and Kinnon had insulted Lucey at other times before the events in question.  Kinnon is a former Malden city councillor, and Lucey, an attorney, had been a frequent participant in Malden political discussions.  As of June of 2023, both were members of the Facebook group "Malden (MA) Politics."  As described by Lucey in his complaint, the group serves as "a forum for discussion of local events and political issues relevant to Malden and the surrounding area."
            In June of 2023, Kinnon and Lucey made a total of four relevant posts regarding an upcoming public hearing of the Malden city council, having to do with some proposed zoning changes.  Kinnon posted,
"Troubling when one of the most important Public Hearings, which could potentially transform the City of Malden's future in a way which ignores the vast majority of Citizens message just a few years back, adding thousand[s] of apartment units and people to our already overcrowded city and underfunded K-8 schools, has barely been promoted by our City Councilors and Mayor.  Tonight 6 pm at City Council Chambers.  June 7th right before summer break.  For anybody who understands the City Council operations this is not an accident."
Lucey then posted,
"You'd almost think the original poster was never a city councilor and never took the same summer break now criticizing.  Eerie."
Kinnon responded,
"I'm beginning to wonder if you are capable of reading.  Might want to read again and anybody who would hire you to be their attorney God Bless them, because someone must have taken the Bar exam for you.  Read below as well for my answer to Mr[.] Bernstein, it might help you."
Finally, Lucey responded,
"[G]od bless a client of mine?  Why, did they sneeze?"
            Approximately five months later, in November of 2023, Lucey filed this complaint for defamation.  He alleged that Kinnon's statement that "someone must have taken the Bar exam for [him]" was made and published by Kinnon knowing that the statement was false or with reckless disregard for its lack of truth, and that the "wording of the statement was such as to be an assertion of fact, and not one of opinion."  The complaint further alleged that Kinnon's statement "could" be damaging to Lucey's "reputation in the community, as well as [his] standing within his profession."
            A Superior Court judge dismissed the claim, ruling as a matter of law that viewed in context, "Kinnon did not make a false statement of fact."  At the same time, the judge denied Kinnon's motion to dismiss under the anti-SLAPP statute, concluding that Lucey's defamation action was not based on Kinnon's petitioning activities alone.  Both rulings are now before us, the parties having cross-appealed.
            Discussion.  1.  The defamation claim.  Lucey's defamation claim need not long detain us.  To establish a claim for defamation, a plaintiff must show:  (1) that the defendant made a false statement to a third party, (2) of and concerning the plaintiff, that (3) is capable of damaging the plaintiff's reputation in the community, and (4) either caused the plaintiff economic loss or is actionable without proof of economic loss.  See Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 52 (2020).  "A statement that is claimed to be defamatory must reasonably be understood either as a statement of actual fact, or one that implies defamatory facts."  Id. at 53.  See Lyons v. Globe Newspaper Co., 415 Mass. 258, 262-267 (1993).  "Statements that are merely 'rhetorical hyperbole,' or that express a 'subjective view,' are not statements of actual fact" (citation omitted).  Kelleher, supra.  See Scholz v. Delp, 473 Mass. 242, 251-252 (2015), cert. denied, 578 U.S. 1023 (2016).  Finally, we evaluate whether a statement is one of actual fact "in light of what an objectively reasonable person would have understood, hearing the statement in the context in which it is made, including the make-up of the audience."  Kelleher, supra.
            The question whether a particular statement is an actionable statement of fact, or instead is reasonably understood as rhetorical hyperbole, is (at least in the first instance) a question of law.  See Fleming v. Benzaquin, 390 Mass. 175, 188 (1983).  See also Restatement (Second) of Torts § 614(1), at 311 (1977) ("The court determines [a] whether a communication is capable of bearing a particular meaning, and [b] whether that meaning is defamatory").  Here, the statement at issue is rhetorical hyperbole, and would not be understood otherwise by a reasonable person reading the statement in context.  See Lyons, 415 Mass. at 263 ("court must 'examine the statement in its totality in the context in which it was uttered or published'" [citation omitted]).  The context itself is banter, between two persons whose statements indicate that they had bantered previously.
            For example, Lucey's first post, which appears immediately prior to the defendant's post at issue, contains obvious sarcasm.  Lucey states that "[y]ou'd almost think the original poster was never a city councilor."  That post obviously was not intended to be understood as fact.  Kinnon's response is more of the same:  he is "beginning to wonder" whether Lucey can read.  Kinnon is not "wonder[ing]" for very long, however, because two sentences later Kinnon tells Lucey to "[r]ead" another post of his.  A reasonable person reading this exchange accordingly would understand the context, which was that much, if not all, of what Kinnon said to Lucey, and Lucey to Kinnon, was not to be taken as serious assertions of fact.
            The same is true of the challenged statement itself:  "anybody who would hire you . . . God Bless them, because someone must have taken the Bar exam for you."  Kinnon did not state a fact -- that is, he did not assert that someone else did take the bar exam on Lucey's behalf; rather, Kinnon stated that someone "must have."  The challenged statement thus did not present as a statement of fact, but as opinion; Kinnon asserted that because it (supposedly) appeared to him that Lucey could not read, and because Lucey is a lawyer, Kinnon deduced that someone "must have" taken the bar exam for him.  In context, Kinnon's entire passage is rhetorical hyperbole, designed to insult but not to state facts.  Indeed, Lucey himself quite apparently did not understand the operative post as making a serious factual assertion, since he responded with a joke of his own:  "[G]od bless a client of mine?  Why, did they sneeze?"
            This is not the stuff of a defamation claim.  Lucey's claim was properly dismissed.
            2.  The anti-SLAPP motion.  Kinnon's anti-SLAPP motion presents a more substantial question.  The motion judge denied the motion, reasoning that Lucey's defamation action was not based solely on Kinnon's petitioning activity.[2]  On appeal, Kinnon insists that the statement at issue qualifies as petitioning activity, relying on the anti-SLAPP statute's broad definition of "a party's exercise of its right of petition."  G. L. c. 231, § 59H.  Relying on that express definition, Kinnon argues that his statement -- "someone must have taken the Bar exam for you" -- was "made in connection with an issue under consideration . . . by a legislative . . . body, or . . . governmental proceeding," and/or that it was "reasonably likely to enlist public participation in an effort to effect such consideration" (emphasis added).  Id.  It appears to be Kinnon's view that, because he started the chain of posts with a statement directed to an issue before a legislative body, the posts that followed all should be considered as made "in connection with" his petitioning activity.
            The operative facts are not in dispute, and thus the question whether Kinnon's statement qualifies as the "exercise of [his] right of petition" under G. L. c. 231, § 59H, presents as a question of law.  See Bristol Asphalt Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 561 (2024) (Bristol Asphalt).  It is true, as Kinnon argues, that the statute defines the exercise of petitioning rights broadly; the definition is set forth in full in the margin.[3]  However, as is often the case when the words "in connection with" are used to describe scope, the definition is in need of further construction, to establish its limits.  See, e.g., Outfront Media LLC v. Assessors of Boston, 493 Mass. 811, 815-820 (2024) (further defining words "in connection with" as used in statute governing tax exemptions for property owned by Massachusetts Bay Transportation Authority).  See also D'Addario v. D'Addario, 75 F.4th 86, 95-96 (2d Cir. 2023), quoting Securities & Exch. Comm'n v. Zandford, 535 U.S. 813, 820 (2002) (Federal securities statute's "in connection with" language "must not be construed so broadly as to convert every common-law fraud that happens to involve securities into a violation").
            Here, the anti-SLAPP statute's definition of petitioning has been further defined and limited, by the Supreme Judicial Court.  In Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 142-161 (2017) (Blanchard I) (S.C., 483 Mass. 200 [2019], overruled on other grounds by Bristol Asphalt, 493 Mass. at 551-556), the court considered whether the anti-SLAPP statute applied to two different types of statements, made by a hospital president, that allegedly defamed certain hospital employees who worked in the hospital's adolescent psychiatric unit.  At the time the hospital president made the allegedly defamatory statements, the hospital unit was under investigation by the State's Department of Mental Health (DMH).  Blanchard I, supra at 144-145.  The first type of statement was made to (and published by) the Boston Globe; the second type was an internal e-mail message to all employees at the hospital, which advised them that after a "thorough[]" investigation, the hospital president had determined that "a number of [hospital] staff [had] not demonstrated [a] steadfast commitment to patient care," and hence had been terminated.  Id.
            In response to the employees' defamation action, the hospital defendants invoked the anti-SLAPP statute, arguing that each of the statements was made "in connection with an issue under . . . review by [an] executive . . . body."  Id. at 148.  The hospital's position was that because DMH was at the time considering whether to revoke the hospital's license, each of the president's statements was part of the hospital's efforts to maintain its license by demonstrating to DMH that it was taking remedial steps.  Id.  The Supreme Judicial Court, however, agreed only in part.  Id. at 149-153.  The court held that the statements to the Boston Globe qualified as protected petitioning, because the evidence showed that those statements "were intended to demonstrate to DMH the hospital's public commitment to address the underlying problems at the unit."  Id. at 150.  The internal e-mail did not qualify as petitioning activity, however, because nothing in the content of the e-mail "suggest[ed] any audience for the message other than hospital employees."  Id. at 151.  "A private statement to a select group of people does not, without more, establish a plausible nexus to a governmental proceeding."  Id. at 152.
            The Blanchard I court's analysis is instructive in analyzing the question presented here.[4]  Most fundamentally, the court's analysis recognizes that although the statutory definition is broad, it has limits; the language must be read consistently with the anti-SLAPP statute's intended purpose, which is to protect statements that are intended to seek redress from the government.  See id. at 147-149.  That is the language of the First Amendment to the United States Constitution; it protects the right "to petition the Government for a redress of grievances" (emphasis added).[5]  See Blanchard I, supra at 157-158 & n.24.
            Consistent with that purpose, the Blanchard I court construed the anti-SLAPP statute's "in connection with" definition as requiring a communication "made to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly" (citation omitted).  Blanchard I, 477 Mass. at 149.  The court continued,
"The archetypical demonstration of this nexus involves a party's statement regarding an ongoing governmental proceeding made directly to a governmental body.  Failing something this clear cut, courts look to objective indicia of a party's intent to influence a governmental proceeding.  This intent to influence is manifested in statements that are closely and rationally related to the [governmental proceeding] and in furtherance of the objective served by governmental consideration of the issue under review" (emphasis added; quotations and citations omitted).
Id.  Blanchard I thus established a limit on the words "in connection with" -- one that appropriately ties back to the language of the petition clause and the purpose of the anti-SLAPP statute.  See id.
            Applying the above standards, we are quite confident that Kinnon's statement at issue did not constitute petitioning under the statute.  True, Kinnon's initial statement in the exchange likely did constitute petitioning.  That statement observed that the Malden city council had scheduled a hearing on an important matter "right before summer break," and was critical of that decision.  Kinnon's statement was also, at least arguably, directed to "enlist[ing] public participation" at the hearing.  G. L. c. 231, § 59H, sixth par.  The statement was made on a website dedicated to Malden politics, and thus likely had a sufficient nexus to influencing a government proceeding.  See MacDonald v. Paton, 57 Mass. App. Ct. 290, 295 (2003).  But the fact that Kinnon's initial post constituted petitioning activity did not then throw an anti-SLAPP protective blanket over every post that followed.  In contrast to Kinnon's initial post, the post at issue does not meet the Blanchard I test.  Specifically, it contains no "objective indicia" that it was made to influence a government proceeding or to enlist public participation in same.  Blanchard I, 477 Mass. at 149.  The post is certainly not directed to the government, nor does it mention any government proceeding or any of the issues related to the upcoming zoning hearing.  Rather, by the time of the post at issue, the third post in the chain, Lucey and Kinnon had veered off course -- they were no longer seeking to influence a government proceeding but instead throwing barbs at each other.
            Kinnon counters by arguing that insulting Lucey was part and parcel of his effort to influence the Malden city council regarding the upcoming hearing.  At oral argument, Kinnon's counsel posited that "insult[ing] your opponent" was an accepted, even expected component of public discourse, employed to diminish the force of one's opponent's arguments.  We are not persuaded, at least on the facts before us.  Here, Kinnon's comment was directed at Lucey, and we cannot perceive any cognizable nexus to influencing government action.  As in Blanchard I, 477 Mass. at 151-153, the protections of the anti-SLAPP statute will not extend to defamatory statements made outside of that context.  And while Kinnon's insults do implicate Kinnon's free speech rights -- and thus are protected from being sanctioned by the State, see Boos v. Barry, 485 U.S. 312, 322 (1988) ("in public debate [we] must tolerate insulting, and even outrageous, speech") -- such does not mean that Kinnon's statements are also entitled to protection as petitioning activity under the anti-SLAPP statute.
            The decision in MacDonald, on which Kinnon relies, is not to the contrary.  MacDonald, 57 Mass. App. Ct. at 293-295.  In MacDonald, the plaintiff, a town selectman and retired police officer, brought a defamation action after the defendant characterized the plaintiff as acting like a "Nazi," on the defendant's website.  Id. at 291-294.  The defendant's website, called "Athonics Home Page," was designed as an interactive public forum covering issues related to Athol local government.  Id. at 294.  This court held that the plaintiff's defamation claim was properly dismissed under the anti-SLAPP statute, noting the defendant's description of her website as a "technological version of a meeting of citizens on the Town Green."  Id. at 295.
            Although the website in MacDonald and the Malden politics Facebook webpage contain similarities in their purported civic function, what this court held to be "petitioning activity" in MacDonald is plainly distinguishable from Kinnon's post here.  The post in MacDonald was directed at a public official, criticizing him for official decisions related to his approval of a new police station and an ambulance service.  In contrast, Kinnon's comment was an insult directed specifically at Lucey, another private citizen, and its content was divorced from Kinnon's original post.  See id. at 293-295.  Thus, whereas the website in MacDonald represented an attempt to "influence a governmental proceeding," Blanchard I, 477 Mass. at 149, by conveying public derision of a local government official, Kinnon's post was not directed at a public official at all.  See MacDonald, supra at 292-295.
Order allowing defendant's motion to dismiss for failure to state a claim and denying defendant's special motion to dismiss affirmed.
Judgment affirmed.
 
footnotes

 
            1 For purposes of the appeal from the rule 12 (b) (6) motion to dismiss, we accept as true the allegations in Lucey's complaint.  See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011).  As to the anti-SLAPP motion, in the present circumstances there are no material factual disputes regarding the facts as alleged.
            2 Although the case was properly dismissed under rule 12 (b) (6), the anti-SLAPP motion is not moot, because if meritorious, the motion carries with it the right to attorney's fees.  See G. L. c. 231, § 59H; Bristol Asphalt Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 555 (2024) (Bristol Asphalt).
            3 General Laws c. 231, § 59H, sixth par., defines "a party's exercise of its right of petition" as the following:
"any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government."
            4 We note that while the Supreme Judicial Court recently overruled certain aspects of the anti-SLAPP test set forth in Blanchard I, see Bristol Asphalt, 493 Mass. at 551-556, we do not understand the court to have overruled Blanchard I's discussion, 477 Mass. at 152, of what constitutes petitioning activity under the statute.  Indeed, the Bristol Asphalt decision cites Blanchard I's discussion of what constitutes petitioning activity, with apparent approval.  See Bristol Asphalt, supra at 549-553.
            5 We do not mean to suggest that the "exercise of [the] right of petition," as defined by the anti-SLAPP statute, is coextensive with and limited to the petitioning rights of the First Amendment and art. 19 of the Massachusetts Declaration of Rights.  See Bristol Asphalt, 493 Mass. at 549 ("the [anti-SLAPP] statute does not rely solely on these rights, as defined by the United States Supreme Court or this court, to determine the scope of protected activity, and instead provides its own express -- and broad -- definition of petitioning" [quotation and citation omitted]).  Nevertheless, the First Amendment and art. 19 are important touchstones for construing "petitioning" under the statute.  See Kobrin v. Gastfriend, 443 Mass. 327, 333 (2005) (construing statute's right to petition as "that right enumerated in the First Amendment to the United States Constitution . . . and in art. 19 of the Massachusetts Declaration of Rights").